## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| **DAVID MACALL,**<br><br>**Plaintiff,**<br><br>v.<br><br>**FIRST MONTGOMERY GROUP, et al.,**<br><br>**Defendants.** | **Civil No. 24-557 (CPO/EAP)** |

## <u>OPINION</u>

This matter comes before the Court on Plaintiff David Macall's Motion for Leave to File a Second Amended Complaint, ECF No. 70 (Third Motion to Amend the Complaint ("Pl.'s Mot.")). The following Defendants have opposed the Motion: (1) Defendants FB Riverside Owner LLC, FB Riverside JV LLC, and Vertical Realty Capital LLC (collectively, the "FB Defendants"), ECF No. 80 (FB Defs.' Opp.); (2) Defendant Hunter Warfield, Inc. ("HWI"), ECF No. 81 (HWI's Opp.); (3) Defendants David Capozzi and Law Offices of David A. Capozzi, P.C. (collectively, the "Capozzi Defendants"), ECF No. 82 (Capozzi Defs.' Opp.); (4) Defendants Riverside Estates LLC, 2nd Riverside Estates LLC, Pentaurus Limited Liability Company LLC, and Pentaurus Properties LLC (collectively, the "Riverside Defendants"), ECF No. 83 (Riverside Defs.' Opp.); and (5) Defendants First Montgomery Group, The First Montgomery Group/UC, Inc., First Montgomery Group/UC Management, Inc., the Village Apartments, and the Village Group Limited Partnership (collectively, the "FMG Defendants"), ECF No. 84 (FMG Defs.' Opp.).  Plaintiff filed a reply brief in support of his Motion, ECF No. 85 (Pl.'s Reply).  The Court has reviewed the parties' submissions and decides

this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1.  For the following reasons, the motion is **DENIED**.

## FACTUAL BACKGROUND

The Court's January 29, 2025 Opinion on Defendants' Motions to Dismiss, ECF No. 66 (Op.), summarized the relevant facts in Plaintiff's Amended Complaint as follows:

> This matter arises out of Plaintiff's evictions from two rental properties.  Plaintiff alleges that Defendants, twenty-two entities, engaged in "unlawful efforts to coerce tenants to formally agree to amended lease terms and conditions." (*Id.* at ¶ 14).

> **A.  The South Jersey Residence**

> Plaintiff rented an apartment at the Village Apartments in Voorhees Township, New Jersey from March 19, 2006, through April 20, 2023.  (Am. Compl., ECF No. 28-1 at ¶ 17).  From 2019 through 2023, Defendant First Montgomery Group ("FMG"), the owner of the property, initiated several landlord tenant actions in New Jersey Superior Court seeking to evict Plaintiff from the property for violations of the lease.  (*Id.* at ¶¶ 32–35, 39–42).  Specifically, in 2019, Defendant the Village Apartments initiated a summary dispossess action in New Jersey Superior Court against Plaintiff, Docket No. CAM-L-8654-19, for alleged nonpayment of rent.  (*Id.* at ¶ 104).  On November 25, 2019, the trial court entered an order in favor of the Village Apartments finding Plaintiff owed outstanding rent and that the rent increase was proper and reasonable.  *See* (Am. Compl., ECF No. 20, ¶ 104; Capozzi Defs.' Br., ECF No. 27, Ex. C).  Thereafter, Plaintiff appealed the trial court's decision, and the Appellate Division affirmed.  *See* (Docket No. A-1724-19T3; Capozzi Defs.' Br., ECF No. 27, Ex. D).  Specifically, the Appellate Division affirmed the trial court's determination that Plaintiff had consented to the rental increase by remaining in the residence after the notice and that the one-month notice was proper.  *Id.*  Following a remand to the trial court on the issue of whether the rent notice was sufficient, the Appellate Division later affirmed the trial court's determination that it was sufficient.  *See* (Docket No. A-2819-20; Capozzi Defs.' Br., ECF No. 27, Ex. H).

> Following another separate eviction proceeding, on April 6, 2023, Plaintiff entered into a Consent to Judgment agreeing to vacate the property.  (Am. Compl., Ex. E).  Thereafter, Defendant

FMG sought to collect unpaid monies and attorney's fees related to the landlord tenant litigation.  (*Id.*).

Based on these rent notices and eviction proceedings, Plaintiff alleges Defendants FMG, First Montgomery Group/UC, Inc., First Montgomery Group/UC Management, Inc., the Village Apartments, Village Group Limited Partnership, Greenblatt Lieberman Richards & Weishoff LLC, the Law Offices of David A. Capozzi, P.C., and Hunter Warfield, Inc. (collectively, "South Jersey Defendants"), failed to provide three-months' notice of a rent increase, wrongfully sued seeking eviction on three separate occasions, and made false claims against him.  (*Id.* at ¶¶ 19–27).

**B.**    **The North Jersey Residence**

From January 2015 through April 2023, Plaintiff rented an apartment at Riverside Garden Apartments in Cranford, New Jersey. (*Id.* at ¶ 107).  Plaintiff alleges Defendants initiated eviction proceedings against him in New Jersey Superior Court in 2019 and 2022. (*Id.* at ¶ 113).  The 2019 proceeding was settled in 2020.  *See* (Riverside Defs.' Br., ECF No. 33, Ex. 2).

As for Defendants Pentaurus Limited Liability Company, Pentaurus Properties LLC, Riverside Estates LLC, Vertical Capital Realty LLC, FB Riverside Owner LLC, and FB Riverside JV LLC (collectively, "North Jersey Defendants"), Plaintiff alleges they fraudulently asserted late rent fees, brought a wrongful eviction action which allegedly resulted in his constructive eviction, coerced him into a "month-to-month tenancy," and doubled his rent as an alleged sanction for not agreeing to amended terms and conditions. (*Id.* at 108–11).

Op. at 3-5 (footnotes omitted).

## PROCEDURAL HISTORY

On January 26, 2024, Plaintiff filed this action against thirteen defendants and numerous John Doe defendants, setting forth multiple claims, including wrongful eviction; constructive eviction; malicious use of process; reprisal under N.J.S.A. § 2A:42-10.10 and § 2A:42-10.12; intentional infliction of emotional distress; wrongful dispossession or trespass; "forcible detainer, conversion; breach of implied covenant" under N.J.S.A. § 2A:39-2; "conversion, distraint, breach of implied covenant"; violations of the New Jersey Consumer Fraud Act; defamation; violations of

the Fair Debt Collection Practices Act; landlord's failure to account for security deposit; reprisal; and violations of the New Jersey Consumer Fraud Act. ECF No. 1 (Compl.). On April 10, 2024, Plaintiff filed an amended complaint as of right, ECF No. 9, which the Court struck for failure to comply with Federal Rule of Civil Procedure 8(a)(2)'s mandate for a "short and plain statement of the claim showing that the pleader is entitled to relief." ECF No. 16 (Order). Thereafter, on May 20, 2024, Plaintiff filed his Amended Complaint, which is the operative pleading at this juncture. ECF No. 20 (Am. Compl.).

Defendant HWI and the Riverside Defendants each filed answers, ECF Nos. 22 (HWI Answer), 24 (Riverside Defs.' Answer), while the remaining Defendants—with the exception of Greenblatt Lieberman Richards & Weishoff, Greenblatt & Lieberman, LLC, and Weishoff and Richards LLC—filed three separate motions to dismiss, ECF Nos. 27 (Capozzi Defs.' Mot.), 28 (FMG Defs.' Mot.), and 33 (Riverside Defs.' Mot.). Plaintiff then filed a motion for leave to amend and supplement the Complaint, ECF No. 49 (Pl.'s First Mot. to Amend), which was opposed by multiple Defendants. ECF Nos. 52 (Riverside Defs.' Opp.), 53 (FB Defs.' Opp.), 54 (Capozzi Defs.' Opp.), and 56 (HWI Defs.' Opp.). The Court denied Plaintiff's motion for leave to amend in light of the already pending motions to dismiss. ECF No. 57 (Order). On July 25, 2024, Defendant HWI filed a motion for judgment on the pleadings. ECF No. 58 (HWI Mot.).

On January 29, 2025, the Court granted the three motions to dismiss and the motion for judgment on the pleadings, dismissing Plaintiff's Amended Complaint in its entirety as to the moving Defendants. ECF No. 67 (Order). The Court found that (1) Plaintiff's Amended Complaint failed to adhere to pleading requirements; (2) Plaintiff failed to state a claim under the FDCPA; (3) the Court lacked jurisdiction under the *Rooker-Feldman* doctrine to seek review of any related prior state court decisions; (4) the doctrines of *res judicata* and collateral estoppel also barred re-litigation of the state court decisions and related issues; and (5) all remaining claims asserted in the Amended

Complaint arising from the rent notices and eviction proceedings should have been brought in the various state court actions, pursuant to New Jersey's Entire Controversy Doctrine. *See* Op. at 10-17. To the extent Plaintiff stated claims unrelated to the prior state court actions, or against any party not in privity with a party in the state court litigation, the Court dismissed them for failure to state a claim and failure to comply with Federal Rule of Civil Procedure 8(a)(2). *Id.* at 17-18. Finally, the Court granted Plaintiff thirty days in which to file a motion for leave to amend. *Id.* at 18-19.

On February 28, 2025, Plaintiff filed a second motion to amend his complaint. ECF No. 68 (Second Mot. to Amend). That motion was summarily denied on March 3, 2025, because Plaintiff failed to include a proposed second amended complaint. ECF No. 69 (Order).

Thereafter, on April 2, 2025, Plaintiff filed the current Motion to Amend Complaint, Pl.'s Mot., attaching his proposed second amended complaint, ECF No. 70-4 (Proposed Second Am. Compl. ("Proposed SAC")). Multiple Defendants have opposed the Motion, including (1) the FB Defendants, ECF No. 80; (2) Defendant HWI, ECF No. 81; (3) the Capozzi Defendants, ECF No. 82; (4) the Riverside Defendants, ECF No. 83; and (5) the FMG Defendants, ECF No. 84.[1] On May 13, 2025, Plaintiff filed a reply brief in support of his motion. Pl.'s Reply.

## STANDARD OF REVIEW

Rule 15(a) governs amendments to pleadings before trial. A party may amend its pleading once as a matter of course within either twenty-one days after serving it; or if the pleading is one to

---

[1] Plaintiff also names as Defendants the following entities: Greenblatt Lieberman Richards & Weishoff LLC; Greenblatt & Lieberman, LLC; and Weishoff and Richards LLC. *See* Proposed SAC. While it is not clear whether these are all one entity or separate entities, the Court will assume, for purposes of this motion, that they constitute three separate entities. These Defendants were served with a copy of the original and amended complaints on April 12, 2024. *See* ECF No. 17 at PageID 495-506. Nonetheless, they have not filed an answer or a response in opposition to the motion for leave to amend. As such, Plaintiff may proceed accordingly with respect to these Defendants.

which a responsive pleading is required, the earlier of twenty-one days after service of a responsive

pleading or twenty-one days after a motion under Rule 12(b), (e), or (f).  Fed. R. Civ. P. 15(a)(1).  If

those deadlines have expired, a party may amend its pleading only with the opposing party's written

consent or the court's leave.  Fed. R. Civ. 15(a)(2).  "The court should freely give leave when justice

so requires."  *Id.*

The Third Circuit has adopted a liberal approach to the amendment of pleadings.  *Spartan*

*Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019); *see also Donovan v.*

*W. R. Berkley Corp.*, 566 F. Supp. 3d 224, 229 (D.N.J. 2021) ("Generally, there is a presumption in

allowing the moving party to amend its pleadings.").  However, the Court may deny a motion for

leave to amend in one of four instances: (1) the amendment would be futile; (2) the moving party

has demonstrated undue delay, bad faith, or dilatory motives; (3) the amendment would prejudice

the non-moving party; or (4) the moving party was put on notice of deficiencies in its pleading but

chose not to resolve them.  *U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.,* 769 F.3d 837, 849

(3d Cir. 2014) (quotations omitted).  Ultimately, the decision of whether to grant leave to amend lies

within the sound discretion of the court.  *Arab Afr. Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir.

1993).

## DISCUSSION

The Proposed SAC purports to replead claims and add new claims against all of the previous

Defendants.  Given the separate oppositions filed by the various groups of Defendants, the Court

will, for clarity purposes, address each opposition individually.

## A.    Claims Against the Capozzi Defendants

The Proposed SAC sets forth the following allegations against Defendant David Capozzi:

In March 2024, the First South Jersey Attorney, Defendant David Capozzi, filed a
Rule 12(b)(6) motion alleging a State court issued a final judgment adverse to
plaintiff. In particular, on the third page of Defendant Capozzi's motion brief, he

> alleges "Landlord/Tenant Litigation was instituted as a result of Plaintiff's non-payment of rent, subsequent to service of a Notice of a Rent Increase. On November 25, 2019, the trial court entered an Order in favor of Village Apartments in the summary dispossess action, and finding Plaintiff owed Village Apartments $875 for rent due and owing, and that the rental increase effectuated by the landlord in March 2019 was proper and reasonable." The same Court's order of April 21, 2021, provides that tenant owed only $315, because the summary landlord-tenant court did not have jurisdiction over other amounts claimed by Capozzi.

Proposed SAC ¶ 80. In other words, Plaintiff claims that Defendant Capozzi filed a motion in Plaintiff's federal lawsuit misstating the amount of the judgment issued by the state court against Plaintiff in the landlord/tenant litigation with the Village Apartments. *Id.* Plaintiff posits that this false statement constitutes a Fair Debt Collection Practices Act ("FDCPA") violation. *Id.* ¶¶ 81-84. He further asserts that Defendant Law Offices of David A. Capozzi, P.C. is vicariously liable for Capozzi's actions. *Id.* ¶ 86.

The Capozzi Defendants challenge these claims as futile on two grounds. First, they contend that, to the extent Plaintiff's claims are tethered to statements made in a federal brief, the statements are privileged and immune from liability under the litigation privilege. Capozzi Defs.' Opp. at 7-9. Second, they argue that, regardless of privilege, Plaintiff's FDCPA claims are futile because the challenged statements are not intended to collect a debt. *Id.* at 9-11.

1.    Whether the Litigation Privilege Provides Immunity Under the FDCPA

"The litigation privilege has deep roots in the common law of New Jersey." *Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 401 (D.N.J. 2009) (citing *Loigman v. Twp. Comm. of Twp. of Middletown*, 185 N.J. 566, 579 (2006)). "The privilege insures that '[s]tatements by attorneys, parties and their representatives made in the course of judicial or quasi–judicial proceedings are absolutely privileged and immune from liability.'" *Id.* (quoting *Peterson v. Ballard*, 292 N.J. Super. 575, 581 (App. Div. 1996)). Successful invocation of the privilege requires that a litigant establish the communication was "(1) made in judicial or quasi-judicial proceedings; (2) by

litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) [] have some connection or logical relation to the action." *Hawkins v. Harris*, 141 N.J. 207, 216 (1995) (internal citation omitted).

While the litigation privilege has been deemed to apply "absent explicit abrogation," *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 524 (D.N.J. 2012), the United States Court of Appeals for the Third Circuit has noted that the FDCPA supersedes the privilege, *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 369 (3d Cir. 2011) (internal citation omitted).

> "[C]ommon law immunities cannot trump the [FDCPA]'s clear application to the litigating activities of attorneys" . . . . [W]e will not "disregard the statutory text in order to imply some sort of common law privilege" . . . . The application of the New Jersey litigation privilege does not absolve a debt collector from liability under the FDCPA.

*Id.* (internal citations omitted). The Court further emphasized that the FDCPA is intended to address attorneys' debt collection practices, that attorneys are regarded as debt collectors, and that "'the term "debt collector" applies to attorneys who regularly, *through litigation*, try to collect consumer debts.'" *Id.* at 367 (quoting *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995)) (emphasis in original). Accordingly, the Capozzi Defendants' attempted use of the litigation privilege as a shield against FDCPA liability is misplaced.

    2.   <u>Whether the FDCPA Claims Against the Capozzi Defendants Are Futile</u>

Notwithstanding their inability to benefit from the litigation privilege, the Capozzi Defendants correctly note that Plaintiff's FDCPA claims against them are futile because the challenged statements are not attempts to collect a debt. "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). "The statute's substantive provisions . . . make clear

that it covers conduct 'taken in connection with the collection of any debt.'" *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245 (3d Cir. 2014) (citation omitted). Thus, "communications that include discussions of the status of payment, offers of alternatives to default, and requests for financial information may be part of a dialogue to facilitate satisfaction of the debt and hence can constitute debt collection activity." *Id.* at 245-46.

Here, the statements challenged by Plaintiff do not fall into any of those categories. *See* ECF No. 1. Plaintiff sued Defendants in federal court. In response, the Capozzi Defendants filed a motion to dismiss. *See* ECF No. 4. The Capozzi Defendants' supporting brief recited the factual history of the underlying state court litigation:

> On November 25, 2019, a final judgment was entered by the Superior Court of New Jersey as to the amount owed in rent to Village Apartments . . . . At this time, it was conclusively established that Plaintiff owed $875 in rent, as well as the fact that rental increase effectuated by the Landlord in March 2019 was proper and reasonable.

ECF No. 4-1 (Mem. Supporting Mot. to Dismiss) at 13; *see also id.* at 30. In so stating, the Capozzi Defendants cited directly from the Order of the New Jersey Superior Court. ECF No. 4-5 (N.J. Superior Court Order). The singular purpose of this briefing was an effort by the Capozzi Defendants to have all claims in the federal lawsuit against them dismissed; nothing in the brief can be construed as an attempt to collect a debt.

Accordingly, Plaintiff's Proposed SAC, which seeks to impose FDCPA liability on the Capozzi Defendants based solely on statements in their federal briefing, is futile. Leave to file an amended complaint against these Defendants is therefore denied.

## B.    Claims Against Hunter Warfield, Inc.

The Proposed SAC sets forth the following factual allegations against Defendant Hunter Warfield, Inc. ("HWI"), who was the debt collector on behalf of First Montgomery Group:

(88)    On September 11, 2023, Hunter Warfield sent the letter included in exhibit F repeating false claims made by First Montgomery Group. Such claims are false for the reasons described in the allegations against First Montgomery Group. Since plaintiff overpaid First Montgomery Group, their demands for payment of amounts not owing and not supported by their lease document are fraudulent. Exhibit F includes First Montgomery Group's demand for attorney fees. However, their lease document in exhibit C allows attorney fees only in event of a default, as defined under the lease. Exhibit F includes the landlord-tenant court's order providing that no determination has been made with regard to attorney fees, because the landlord-tenant court has limited and specified jurisdiction, which is not preclusive in any way under New Jersey law, and in which no other claims or counterclaims are permitted to be joined, N.J.Ct.R. 6:3-4(a). Exhibit E includes First Montgomery Group's false claim, in September 2022, for $85, which effectively constitutes First Montgomery Group's admission that greater amounts claimed before and after September 2022 were fraudulent.

(89)    Hunter Warfield's letter, dated September 11, 2023, included as part of the complaint's exhibit E, specifically states, "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT."

(90)    On or about September 30, 2023, Hunter Warfield fraudulently placed a false collection claim on plaintiff's consumer credit reports. The amount of such false claim repeats the same amount previously falsely claimed by First Montgomery Group and Hunter Warfield. Exhibit F includes a calculation of plaintiff's overpayments.

(91)    The evidence shows Hunter Warfield received plaintiff's dispute, dated January 26, 2024, which was sent via certified mail.

(92)    After January 26, 2024, Hunter Warfield fraudulently placed a false charge-off claim on plaintiff's consumer credit reports, which was reduced from First Montgomery Group's false claims by the amount of plaintiff's protective over-payment of an amount not legally owing. Thus, Hunter Warfield processed plaintiff's dispute and protective over-payment of an amount not legally owing and did the math.

(93)    In June 2024, the Debt Collector's attorney proffered a false affidavit from a compliance manager of the Debt Collector. Such affidavit falsely asserts the company has no record of receiving plaintiff's dispute. Such assertion is clearly false, because the Debt Collector processed plaintiff's dispute and small protective over-

payment check, and deducted such amount from the total reported as charged off (Count 21C in plaintiff's motion for supplementation of July 10, 2024).

Proposed SAC ¶¶ 88-93. The Proposed SAC then pleads multiple legal claims against HWI, including (a) reporting false information to consumer credit reporting agencies, 15 U.S.C. §§ 1692e(2)(A) and 1692f(1), *id.* ¶¶ 94, 95; (b) failure to report the amount as disputed in violation of 15 U.S.C. § 1692e(8), *id.* ¶ 96; (c) defective initial communication in violation of 15 U.S.C. § 1692g, *id.* ¶ 97; (d) reporting of false information to consumer credit reporting agencies, 15 U.S.C. § 1692e(2)(A), 1692f(1), and/or 1692g(a), *id.* ¶ 98; (e) creating a "false impression of an account stated," 15 U.S.C. §§ 1692e(2)(A) and/or 1692f(1), *id.* ¶ 99; and (f) proffering a false affidavit from a compliance manager in violation of 15 U.S.C. § 1692e(2)(A), *id.* ¶ 100.

Plaintiff previously asserted these precise claims against HWI in his Amended Complaint. *See* Am. Compl. Specifically, Plaintiff pled that HWI was a debt collector that reported Plaintiff's debt but failed to "notify Plaintiff of the requirement to dispute [the alleged debt] within thirty days, and which ma[de] false claims about the amount, character, and legal status of the falsely alleged debt." *Id.* ¶¶ 17, 26. The Amended Complaint further asserted that HWI sent a legally defective letter to Plaintiff on September 11, 2023, demanding payment of $21,065.55. *Id.* ¶¶ 81, 103. Plaintiff posited that HWI was liable under multiple legal theories, including a violation of the FDCPA. *Id.* ¶¶ 96-103.

Addressing the FDCPA claims against HWI in the January 29, 2025 Opinion, the Court specifically held that:

> As for the HWI Defendant, which Plaintiff alleges was a debt collector, Plaintiff also fails to state a claim because there are no factual allegations to support such a claim. For example, there are no factual allegations that HWI misrepresented the amount, character, or legal status of any debt other than Plaintiff's conclusory allegations which are insufficient. Moreover, though Plaintiff alleges violations under Sections 1692e, 1692f, and 1692g, Section

> 1692f is "a catch-all provision for conduct that is unfair, but is not specifically enumerated in any other section of the FDCPA." *Corson v. Accounts Receivable Mgmt., Inc.*, No. 13-1903, 2013 WL 4047577, at *7 (D.N.J. Aug. 9, 2013). Thus, "[a] complaint fails to state a claim under Section 1692f unless it identifies some misconduct by the debt collector other than that which provides the basis for the plaintiff's claims under other provisions of the FDCPA." *Hoover v. Midland Credit Mgmt., Inc.*, No. 10-06856, 2012 WL 1080117, at *8 (E.D. Pa. Mar. 30, 2012). Here, though Plaintiff alleges a violation of 1692f, he does not identify a separate basis to support such a claim. Finally, though Plaintiff alleges that HWI Defendant failed to provide the required notice under 1692g, HWI Defendant maintains that the letter Plaintiff bases his claim on was a follow-up letter and that the initial letter, attached to HWI Defendant's Answer, which is integral to the pleadings and its claims, does contain the required notice language. (HWI Def. Br., ECF No. 35 at 18; HWI Answer, ECF No. 30, ¶ 7). For these reasons, Plaintiff fails to state a claim under the FDCPA against HWI.

Op. at 12-13.

The Proposed SAC's claims against HWI are nothing more than a rehash of the claims previously dismissed by this Court. "An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." 3 MOORE'S FEDERAL PRACTICE ¶ 15.15 (3d ed. 2025). Plaintiff effectively concedes this point by asserting that he "was not required to plead new legal allegations against Hunter Warfield" and that he "has cured the stylistic defect in the earlier versions of the complaint by copying Hunter Warfield's written admission into the body of the complaint, since plaintiff's allegation of the same was rejected by the Court at the pleadings stage." Pl.'s Reply at 10. This argument misunderstands the Court's ruling, which found that Plaintiff's allegations against HWI, taken as true, failed to state any claim under the FDCPA. Given that the Proposed SAC has not substantively amended these claims, they are therefore futile. In turn, the Court denies Plaintiff's motion for leave to amend with respect to Defendant HWI.

**C.**  **Claims Against the FB Defendants**

The Proposed SAC sets forth the following factual allegations against the FB Defendants:

(115)  On or about November 15, 2022, Vertical Realty and Pentaurus notified tenants that the apartment building had been sold, and our residential leases assigned, to Pentaurus. Such message specifically provided that "All future payments of rent, additional rent, and other sums due under your lease, and all notices and other correspondence to the landlord under your lease should be sent" to the acquiring entity, Riverside Estates LLC, at the NJ address of Pentaurus Properties LLC. On or about November 7, 2022, Vertical Realty sent a message stating "that a late fee of $50 was added to your November rent." Such message went on to state that "We did receive your November rent and it was returned to you on October 25, 2022, because the company was scheduled to close on October 31, 2022, but closing was rescheduled."

(116)  The predecessor's lease agreement document only allows attorney fees or late fees in event of default as defined under the lease. The absence of any event of default as defined under the lease agreement precludes any award for attorney fees or late fees. Since the lease agreement is written in plain English, the North Jersey Landlord's demands for late fees and/or attorney fees are clearly fraudulent.

(117)  Therefore, plaintiff was assessed a late fee for paying early. This is not permissible under the lease agreement, which provides that payment of rent prevents the condition precedent, of a late payment, from occurring. The new owner, Pentaurus Properties LLC, fraudulently demanded payment of this fraudulent charge on numerous occasions, and fraudulently stacked penalties, by multiplying "late fees" because the initial fraudulent charge was not paid. The new owner then commenced a wrongful eviction action in an attempt to collect these fraudulent charges. Such result is foreseeable and evidently was intended by Vertical Realty. Presumably such action was intended as retaliation for plaintiff's previous efforts to secure his rights under the lease.

(118)  Moreover, the North Jersey Landlord's message of November 2022 effectively admits no underlying liability in respect of rent payments under the lease agreement. All amounts claimed by the North Jersey Landlord before or after such Landlord's message of November 2022 are fraudulent by virtue of the Landlord's November 2022 admission. There was no liability for unpaid rent (no entitlement to proffered rent increase) under either

the terms and conditions of the lease agreement or under New Jersey law governing rent increase notices.

Proposed SAC ¶¶ 115-18. The Proposed SAC further asserts that Defendant Vertical Realty Capital LLC, FB Riverside Owner LLC, and FB Riverside JV LLC are in a common business enterprise with Vertical Realty, and as such, are vicariously liable for any improper actions by Vertical Realty LLC. *Id.* ¶¶ 122-23, 126-29. Plaintiff purports to assert multiple claims against the FB Defendants, including (1) fraud; (2) defamation; (3) breach of New Jersey's duty of good faith and fair dealing; and (4) constructive eviction. *Id.* ¶¶ 119-129.

The FB Defendants contend that all of Plaintiff's claims against them are futile and thus, leave to amend as to Plaintiff's claims against them should be denied. The Court considers each claim individually.

1.   Fraud

The elements of common law fraud are "'(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 313 (3d Cir. 2012) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)). Common law fraud claims are subject to heightened pleading requirements. *Quality Eye Assocs., LLC v. ECL Grp., LLC*, No. 22-2489, 2022 WL 2916053, at *4 (D.N.J. July 25, 2022). Thus, pursuant to Federal Rule of Civil Procedure 9(b), a party must "(1) 'state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged'; and (2) 'plead or allege the precise [] date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Id.* (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

Here, according to the Proposed SAC's factual allegations, Plaintiff paid his November rent to the FB Defendants in October 2022, but the FB Defendants returned the rent check to Plaintiff because they were scheduled to close the company on October 31, 2022.  Proposed SAC ¶ 115. Although the closing date for the property sale was moved to November 15, 2022, Plaintiff did not pay the required November 2022 rent to either the FB Defendants or Pentaurus.  *Id.* ¶ 117. Ultimately, the FB Defendants assessed a late fee pursuant to the terms of the lease.  *Id.*  Plaintiff does not explain how the imposition of this late fee constitutes a material misrepresentation of any fact.  Plaintiff also does not plead that he relied on this alleged misrepresentation or that he suffered any damages as a result.  Given the absence of allegations setting forth with the requisite particularity all of the elements of a fraud claim, Plaintiff's efforts to amend his complaint to plead this fraud claim are futile.

      2.   <u>Defamation</u>

Plaintiff also raises a defamation claim against the FB Defendants.  "To establish defamation under New Jersey law, a plaintiff must show the defendant (1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault."  *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 204 (D.N.J. 2011) (footnote omitted) (citing *Singer v. Beach Trading Co.*, 379 N.J. Super. 63, 79 (App. Div. 2005)).  "[T]o qualify as a defamatory statement, the statement must be able to be proven true or false."  *Id.* at 205 (citation omitted).  Under the second element, "the complaint must 'plead facts sufficient to identify the defamer and the circumstances of publication.'"  *Id.* at 206 (quoting *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 767 (1989)).  Pursuant to the third element, a plaintiff must establish fault.  As a private person, Plaintiff here need only show that the FB Defendants were negligent.  *Id.* (citing *McLaughlin v. Rosanio, Bailets & Talamo, Inc.*, 331 N.J. Super. 303, 314 (App. Div. 2000)).

Under New Jersey law, a defamation action must be filed within one year of the act in question. *See* N.J.S.A. § 2A:14-3. "[T]he discovery rule exemption that tolls the statute of limitations in torts claims until an aggrieved party learns of his injury . . . is inapplicable to defamation claims under New Jersey law." *Farzan v. United Parcel Serv., Inc.*, No. 10-135, 2011 WL 3510860, at *3 (D.N.J. Aug. 8, 2011) (internal citations omitted). "Instead, New Jersey law mandates that the statute of limitations for a defamation claim begins to run from the date of publication." *Id.* (citing *Lawrence v. Bauer Publ'g & Printing Ltd.*, 78 N.J. 371, 374-75 (1979) (further citations omitted)).

Here, the alleged defamatory email was sent in November 2022. *See* Proposed SAC ¶¶ 115-18. Plaintiff, however, did not file this lawsuit until January 2024, *see* ECF No. 1, and did not raise a defamation claim until his first attempt to file a second amended complaint in February 2025, *see* Second Mot. to Amend. Because any defamation claim arising out of the November 2022 email was required to be filed no later than November 2023, Plaintiff's current efforts to amend his pleading and add this claim are futile.

Moreover, Plaintiff fails to adequately plead the elements of defamation. Plaintiff's Proposed SAC and the attachments show that (a) Plaintiff originally paid his October rent to the FB Defendants; (b) the rent check was returned due to the impending sale; (c) after returning the initial check, the FB Defendants attempted to have Plaintiff pay his rent given the change in the closing date of the sale; (d) Plaintiff failed to do so; and (e) the FB Defendants assessed a late fee under the lease. *See* ECF No. 70-5, Ex. G (Lease) ¶ 1(d); ECF No. 70-5, Ex. H (Nov. 7, 2022 Ltr.). Nothing in these allegations allows an inference of falsity, as opposed to a simple dispute about a contractual term. Additionally, Plaintiff does not set forth how the FB Defendants' inclusion of this allegedly fraudulent late charge on his bill injured him, particularly given Plaintiff's admission that it was the

new owner's (Defendant Pentaurus) rent increase and Plaintiff's refusal to pay that increase resulted in Pentaurus's institution of eviction proceedings.  Proposed SAC ¶¶ 134-36.

Given these pleading deficiencies, the Court finds that the proposed amendment to allege a defamation claim against the FB Defendants is futile.

### 3.    Breach of the Implied Covenant of Good Faith and Fair Dealing

"In order to state a claim for breach of duty of good faith and fair dealing under New Jersey law . . . there need not be an express contract term imposing the obligation on Defendants."  *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 531 (D.N.J. 2008).  "Rather, '[a]lthough the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term.'"  *Id.* (quoting *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001)).  "Among other things, a defendant may breach the implied covenant of good faith and fair dealing if the plaintiff's 'reasonable expectations are destroyed when [the] defendant acts with ill motives and without a[n]y purpose,' or the plaintiff 'relies to its detriment on [the] defendant's intentional misleading assertions.'"  *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 463 (D.N.J. 2020) (alteration in original) (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.,* 182 N.J. 210, 226 (2005)).  A breach of the duty of good faith and fair dealing claim under New Jersey law "also requires a showing of 'bad motive or intention.'"  *Dewey*, 558 F. Supp. 2d at 531 (quoting *Wilson*, 168 N.J. at 251).

Here, Plaintiff premises his good faith and fair dealing claim on the same allegations as those in his defamation claims—*i.e.*, "[t]he false claims made by Vertical Realty about [P]laintiff."  Proposed SAC ¶ 120.  Plaintiff contends that the communications from the FB Defendants to Pentaurus that Plaintiff paid his rent late and thus owed a late fee were intended to cause Pentaurus to constructively evict Plaintiff.  *Id.* ¶¶ 119-20.

Plaintiff's ill-defined claim fails to meet the plausibility standard embodied in Federal Rule of Civil Procedure 12(b)(6).  Indeed, the exhibits attached to Plaintiff's Proposed SAC show that Plaintiff's lease with the FB Defendants included clear language that late payment of rent—beyond the fifth of each month—would be subject to a $50 late fee.  *See* Lease at ¶ 1.3.  The legal question regarding the propriety of the imposed late fee constitutes a breach of express contract claim and precludes Plaintiff from asserting a breach of the covenant of good faith and fair dealing based on that same provision.  *See Bonnieview Homeowners Ass'n v. Woodmont Builders, L.L.C.*, 655 F. Supp. 2d 473, 510 (D.N.J. 2009) ("[T]he covenant cannot override an express term in the contract.") (citation omitted)).

Moreover, the Proposed SAC fails to set forth any facts allowing an inference of "bad motive or intention."  Exhibit H to the Proposed SAC is a November 7, 2022 letter from the Property Management Office of the Riverside Gardens Apartments:

> Dear David:
>
> Please be advised that a late fee of $50.00 was added to your November rent.  You currently have a balance of $1791.00.
>
> We did receive your November rent and it was returned to you on October 25, 2022, because the company was scheduled to close on October 31, 2022, but closing was rescheduled.  I left you numerous messages notifying you that closing was rescheduled and that the rent should be paid to FB Riverside Owner LLC but not sure you received my messages.
>
> We apologize for the confusion.  Please leave the November rent check in the Rent Drop Box as soon as possible.
> If you have any questions, please feel free to call me at [redacted].

November 7, 2022 Ltr.  Absent any other facts suggesting bad motive or intention, the Court finds that an amendment to allow inclusion of this claim is futile.

4.     <u>Constructive Eviction</u>

Finally, Plaintiff seeks to assert a claim for constructive eviction against the FB Defendants. "A constructive eviction occurs when a landlord makes the premises unsuitable for occupancy, depriving the tenant of the beneficial enjoyment of the premises." *Haytas v. Bayonne Bd. of Educ.*, No. 13-7676, 2015 WL 6739115, at *3 (D.N.J. Nov. 4, 2015) (citation omitted). "In order to make a claim for constructive eviction, the tenant must abandon or vacate the premises because of the landlord's wrongful act." *Sanders ex rel Sanders v. Rosenberg*, No. 06-1406, 2008 WL 2945983, at *3 (D.N.J. July 30, 2008) (citing *Weiss v. I. Zapinsky, Inc.*, 65 N.J. Super. 351, 357 (App. Div. 1961)). Notably, a constructive eviction occurs when a landlord's "act or omission . . . renders the premises substantially unsuitable for the purpose for which they are leased, or which seriously interferes with the beneficial enjoyment of the premises." *Reste Realty Corp. v. Cooper*, 53 N.J. 444, 457 (1969). "[T]he interference must affect use of the entire premises." *Puccini Foods, LLC v. Abbott Indus., Inc.*, No. A-5639-11T3, 2013 WL 6223366, at *6 (N.J. Super. Ct. App. Div. Dec. 2, 2013). New Jersey courts have recognized constructive eviction only when it arises from a "physical interference with use." *Id.* at *7 (citing *JS Props., L.L.C. v. Brown & Filson, Inc.*, 389 N.J. Super. 542, 548-49 (App. Div. 2006)).

Here, Plaintiff does not contend that the property became unusable or that the late fee notice rendered the premises substantially unsuitable for use. Rather, he claims only that the FB Defendants sent a late fee notice, subsequent to which the new landlord, Pentaurus, filed an eviction proceeding. Proposed SAC ¶ 120. Aside from the fact that Plaintiff has established no connection between the late fee notice and the eviction proceeding, Plaintiff fails to address that it was Pentaurus (part of the Riverside Defendants)—not the FB Defendants—that initiated this proceeding. *Id.* ¶ 134. Given the dearth of facts stating a plausible claim for constructive eviction, the Court finds that any amendment to add this claim is futile.

D.    **Claims Against the Riverside Defendants**

According to the Proposed SAC, the Riverside Defendants acquired the North Jersey apartment building in which Plaintiff was a tenant in November 2022. *Id.* ¶ 134. Subsequently, the Riverside Defendants doubled Plaintiff's rent, *id.* ¶¶ 135-36, and on December 6, 2022, they filed suit against Plaintiff for nonpayment of rent, *id.* ¶¶ 134, 137. The Riverside Defendants then voluntarily dismissed the suit because Plaintiff paid the subject rent, but Plaintiff nonetheless abandoned the apartment tenancy due to the repeated eviction and underpayment notices. *Id.* ¶¶ 138-42. Plaintiff now brings claims against these Defendants for wrongful eviction notices/statutory constructive eviction, *id.* ¶¶ 138-42; malicious use of process, *id.* ¶¶ 143-47; failure to account for security deposit, *id.* ¶¶ 148-49; common law constructive eviction, *id.* ¶¶ 150-58; statutory reprisal, *id.* ¶¶ 159-62; intentional infliction of emotional distress, *id.* ¶¶ 163-64; and fraud under the New Jersey Consumer Fraud Act, *id.* ¶¶ 165-76.

In dismissing these identical claims against other Defendants in this action, this Court previously found that the claims were barred by the *Rooker-Feldman* doctrine. Op. at 13-14.

> It is apparent from Plaintiff's Amended Complaint that he has previously and extensively litigated the issues regarding his tenancy in both residences in multiple state court actions at both the trial court and appellate court levels. As such, to the extent that Plaintiff is seeking a review of a prior state court decision, the *Rooker-Feldman* doctrine applies and precludes him from doing so.

*Id.* at 14 (emphasis added). In addition, the Court found that the *res judicata* and collateral estoppel doctrines barred Plaintiff's attempts to relitigate the claims and issues previously decided in state court. *Id.* at 15-17. Finally, the Court determined that any remaining claims arising from the rent notices and eviction proceedings should have been brought in the various state court actions pursuant to New Jersey's Entire Controversy Doctrine. *Id.* at 17.

Although the Riverside Defendants never previously moved to dismiss the Amended Complaint—and thus were not beneficiaries of the Court's prior dismissal—the prior analysis

applies equally to claims now asserted against the Riverside Defendants.[2]  All of Plaintiff's claims against the Riverside Defendants rest on the Riverside Defendants' assertion of the rent complaint against Plaintiff for non-payment, which Plaintiff claims was untrue and constituted a wrongful eviction action.  As previously noted, all the related claims were either (a) fully litigated in state court; or (b) should have been brought as defenses in the various state court actions and are thus barred by the Entire Controversy Doctrine.  The Court need not rehash the previous analysis.

The only potential claim that might fall outside these legal bars is malicious use of process.  However, "[m]alicious use of process is a disfavored cause of action."  *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 369 (D.N.J. 2000) (citing *Penwag Prop Co. v. Landau*, 76 N.J. 595, 597 (1978)).  "To state a malicious use of process claim, Plaintiffs must allege 'that the original suit (1) was instituted without reasonable or probable cause; (2) was motivated by malice; (3) terminated favorably to [Plaintiffs in this action]; and (4) resulted in a "special grievance" to the plaintiff.'"  *Id.* (quoting *Giri v. Rutgers Cas. Ins. Co.*, 273 N.J. Super. 340, 347 (App. Div. 1994) (alterations in original)).  "'The absence of any one of these elements is fatal.'"  *Id.* (quoting *Brien v. Lamazow*, 227 N.J. Super. 288, 300 (App. Div. 1988)).

Plaintiff fails to adequately plead the third element.  He alleges that the FB Defendants "voluntarily dismissed [their 2022 eviction action] the day before trial without settlement."  Proposed SAC ¶ 153; *see also id.* ¶ 172.  Such allegation does not plausibly allege that the action terminated favorably to Plaintiff.  *Cf. Khashayar v. LBI Realty*, No. A-3320-22, 2025 WL 400540, at *7 (N.J. App. Div. Feb. 5, 2025) (affirming grant of summary judgment on malicious use of process claim where defendants had initiated landlord-tenant action and then voluntarily dismissed it after they entered into several settlement agreements with the plaintiff; the court found that

---

[2]  Plaintiff admits "virtually no substantive changes have been made to the complaint" with regards to the Riverside Defendants.  Pl.'s Reply at 14.

plaintiff had adduced no evidence to create "any genuine and material factual question as to whether that action was terminated favorably to him.").  Indeed, Plaintiff points to no court order or other indication that the action was somehow wrongful.  Given the absence of these allegations, together with the disfavored nature of this cause of action, the Court deems this claim futile.

As Plaintiff has failed to set forth any claims against the FB Defendants that could survive a motion under Rule 12(b)(6), Plaintiff's efforts to add these claims via an amended complaint are futile.

E.     **Claims Against the FMG Defendants**

The Proposed SAC alleges the following against the FMG Defendants:[3]

(43)     On or about March 3, 2021, and on or about March 21, 2021, the Second South Jersey Attorneys proffered on behalf of the South Jersey Landlord notices to quit alleging that plaintiff's lease was terminated as a result of having too many vehicles . . . .  Such notice to quit did not say what the acceptable number of vehicles is.  During covid the South Jersey Landlord demanded that plaintiff get rid of all of his well-maintained vehicles within ten days.  There is no such requirement or limitation in the lease agreement document the South Jersey Landlord proffered . . . and the property in question had plenty of unused parking spaces every night.  First Montgomery Group and the Village Apartments have claimed to be the owners and operators of the property.  As before, none of plaintiff's claims could have been brought in any of the State court actions, N.J.Ct.R. 6:3-4(a).

(44)     On or about March 8, 2021, the South Jersey Landlord fraudulently demanded that plaintiff pay $125 in respect of their Second Attorney's notice that plaintiff get rid of his well-maintained vehicles within ten days, even though the property has many unused parking spaces every night.  No provision in the lease agreement document . . . proffered by the South Jersey Attorneys on behalf of the South Jersey Landlord supports their demand that plaintiff get rid of his well-maintained vehicles . . . within ten days (or their demand that plaintiff pay $125 in respect of their Attorney's notice).  Such demands for payment of $125 in respect of their Attorney's notice were repeated on April 6, 2021, and April 13, 2021.  As before, none of plaintiff's claims could have been brought in any of the State court actions, N.J.Ct.R. 6:3-4(a).

---

[3]  These allegations pertain specifically to Defendant First Montgomery Group, but Plaintiff extends them to the other FMG Defendants by claiming vicarious liability.  *See* Proposed SAC ¶¶ 70-79.

(45)    In June 2021, the Second South Jersey Attorneys filed a complaint in a wrongful eviction action on behalf of the South Jersey Landlord.  Such wrongful eviction action was based in part on the facts described in the two preceding allegations.  In support of such wrongful eviction action during New Jersey's eviction moratorium, the South Jersey Landlord falsely claimed emergency circumstances to seek an order to show cause during the eviction moratorium.  The South Jersey Landlord also returned plaintiff's rent checks without cause, so their eviction complaint fraudulently claimed underpayments of rent.  Such action was settled by the non-preclusive agreement described in allegation 28.  As before none of plaintiff's claims could have been brought in any of the State court actions, N.J.Ct.R. 6:3-4(a).

(46)    The acts or incidents of certain Defendants described in foregoing allegations 43 through 45 appear to be in reprisal of plaintiff's efforts to enforce his rights under the lease by way of non-preclusive landlord-tenant summary-dispossess actions and appeals therefrom.  While such summary-dispossess actions are not preclusive in any way under New Jersey law, they nevertheless provide additional evidence, beyond the South Jersey Landlord's wrongful tow threats (which occurred long after such Landlord's 2014 letter in exhibit B admitting no limitation on number of vehicles plaintiff may have on the property), further supporting plaintiff's allegation of statutory reprisal and other violations of law by certain Defendants.

(47)    On March 18, 2022, plaintiff ordered telephones from Consumer Cellular.  They were shipped the next day, and Consumer Cellular shortly reported they were delivered to the Village Apartments package delivery room, which had cameras.  Plaintiff was not able to find the phones in the package room, and was forced to cancel the phone number transfer order several days later.  After cancelling the phone number transfer, the telephones magically appeared in the package room, and plaintiff was forced to return them to Consumer Cellular.  On June 18, 2022, plaintiff ordered rare electronic components for his 2008 Chrysler from an Amazon vendor.  Such vendor reported shipping the components on June 20, 2022.  On June 25, 2022, plaintiff asked the Amazon vendor why the parts were not delivered.  The vendor replied the parts were delivered the day before, to the Village Apartments package delivery room, which had cameras.  Then commenced five weeks of attempts by the Amazon vendor contacting the Village Apartments staff to locate the package.  The Amazon vendor reported the Village Apartments staff insisted the package was received and available for pick-up, even though it was not.  As before none of plaintiff's claims could have been brought in any of the State court actions, N.J.Ct.R. 6:3-4(a).

(48)    On January 26, 2023, the Second South Jersey Attorneys proffered on behalf of the South Jersey Landlord a notice to quit alleging that plaintiff's lease was terminated as a result of not signing the South Jersey Landlord's rent increase notice . . . . Such notice to quit was never included in any court complaint, proceeding, or settlement, and thus was never part of any State court action, and could not have been included in any State court action, N.J.Ct.R. 6:3-4(a).

(49)     Landlord's long-running pattern of threatening forcible detainers, and of actually committing unlawful distraints, escalated to the point of First Montgomery Group bearing responsibility for the reported theft of plaintiff's vehicle's catalytic converter while plaintiff's vehicle was parked on the property . . . Details about this incident are set forth in plaintiff's motion brief of March 27, 2023, in the summary dispossess proceeding, which also qualifies as a notice of impending litigation, because reprisal is both a defense and a cause of action . . . As before none of plaintiff's claims could have been brought in any of the State court actions, N.J.Ct.R. 6:3-4(a).

(50)     With regards to the settlement agreement included in exhibit E, First Montgomery's attorney, Nicolas Rotsides, said the agreement was not preclusive because First Montgomery Group intended to sue plaintiff for the amounts they have falsely claimed . . . Actions of First Montgomery Group support an inference they interpreted the settlement in such manner.  For example, First Montgomery Group having Hunter Warfield place false information on plaintiff's credit reports, and hiring an attorney in Dallas, both support an inference that First Montgomery interpreted their settlement as non-preclusive.  The settlement agreement expressly clarifying that the South Jersey Landlord was not entitled to a judgment of possession.  In particular, the agreement provides the South Jersey Landlord subsequently may move for a judgment of possession only after plaintiff does not move out by April 20, 2023.  Since plaintiff moved out by April 20, 2023, the South Jersey Landlord was never eligible to move for a judgment of possession.  Moreover, First Montgomery's obtaining a judgment, when they were not eligible to do so, provides evidence that First Montgomery always intended to renege (less than twelve days later).  Nothing changed in only twelve days to permit an interpretation other than fraud in the inducement.  Based on the foregoing, the settlement could be reformed or rescinded for insufficiency of consideration or fraud in the inducement.

(51)     In May 2023, First Montgomery Group demanded payment of $21,065.55, thereby denying their belief of the afore-mentioned settlement being preclusive.  In June 2023, First Montgomery Group demanded payment of $21.065.55.  Their presentation of such amount . . . mostly relates to attorney fees, which have not been adjudicated, and for which they have no colorable claim.  Paragraph 10 of their lease agreement . . . provides for reasonable attorney fees only when there is a default or breach of the lease by the tenant.  None of the document's definitions of default apply here.

(52)     First Montgomery's amount . . . also includes an amount of "rent" that is not itemized.  The evidence will show that First Montgomery's amount of claimed "rent" is clearly wrong.

(53)     Hunter Warfield alleges it received the false allegations from First Montgomery Group described in the two preceding allegations in June 2023.  Regardless of the exact date of Hunter Warfield's receipt of such false claim from

First Montgomery Group, such defamatory claims also constitutes First Montgomery Group's defamation. Such defamation was intended by First Montgomery Group . . . stating "Your name/identification data will be reported to two national credit reporting companies. A report will hinder your ability to secure future credit and will tarnish your present credit standing." Thus, First Montgomery Group stated they would transmit false information to others, and then others received such false information, supporting the inference that First Montgomery Group transmitted the false information, as they said they would. As before, none of plaintiff's claims could have been brought in any of the State court actions, N.J.Ct.R. 6:3-4(a).

Proposed SAC ¶¶ 43-53.

Based on these factual allegations, the proposed SAC sets forth eleven causes of action against the FMG Defendants: (1) wrongful eviction, *id.* ¶¶ 54-55; (2) wrongful eviction under N.J.S.A. 2A:18-61.6(d), *id.* ¶ 56; (3) malicious use of process, *id.* ¶ 57; (4) statutory reprisal under N.J.S.A. 2A:42-10.10 & 2A:42-10.12, *id.* ¶¶ 58-59; (5) wrongful eviction based on the January 2023 notice to quit, *id.* ¶¶ 60-61; (6) theft of Plaintiff's catalytic converter constituting forcible detainer, conversion, and breach of implied covenant, *id.* ¶ 62; (7) diversion of Plaintiff's packages constituting distraint, conversion, and breach of implied covenant, *id.* ¶ 63; (8) fraud in the inducement with respect to the settlement agreement, *id.* ¶¶ 64-65; (9) rescission or reformation of the settlement, *id.* ¶ 66; (10) declaratory relief in the form of rescission or reformation of the settlement agreement, *id.* ¶ 67; and (11) defamation with respect to statements made to a debt collector, *id.* ¶ 68.

### 1. Counts One Through Five, and Eight through Eleven

Counts One through Five and Eight through Eleven were previously raised by Plaintiff against the FMG Defendants in his Amended Complaint. The Court previously determined that these claims were barred on several grounds.

First, the Court found that Plaintiff had "previously and extensively litigated the issues regarding his tenancy in both residences in multiple state court actions at both the trial court and

appellate court levels." Op. at 14.  Specifically, the Court remarked that Plaintiff had litigated claims regarding the November 25, 2019 summary dispossess action and the 2023 eviction proceeding.  *Id.* at 14-15.  As the federal claims against these Defendants simply sought review of state court decisions, the Court found that they were barred by the *Rooker-Feldman* doctrine.  *Id.* at 13-15.

Second, the Court held that "the doctrines of *res judicata* and collateral estoppel bar re-litigating the claims and issues previously decided in state court."  *Id.* at 16.  The Court observed that "Plaintiff's claims premised on the rent notices and the subsequent evictions . . . [had] previously been litigated in state court in various actions."  *Id.*  As such, it emphasized that Plaintiff was precluded from "bringing claims related to the rent increase, notice of rent increase, and the service of notice as they were all previously litigated."  *Id.* at 17.  "Further, Plaintiff's claims in his Amended Complaint which are based on issues already decided in that litigation, like his claims of wrongful eviction, constructive eviction, and wrongful dispossession, are barred."  *Id.*  Ultimately, the Court dismissed with prejudice "any claims related to the 2019, 2020, or 2023 eviction proceedings."  *Id.*

Finally, the Court determined that any remaining claims arising from rent notices and evictions should have been brought in the various state court actions, and thus, were barred under the New Jersey Entire Controversy Action.  *Id.* at 17.  Although Plaintiff's Proposed SAC now challenges any finding that his claims could have been brought in the state court actions, *see* Proposed SAC ¶¶ 25-28, such an allegation is akin to an untimely request for reconsideration of this Court's prior ruling and need not be considered at this juncture.  Because Plaintiff cannot now reassert claims that were previously dismissed with prejudice, his request to file the Proposed SAC re-pleading these claims is denied as futile.

2.    Counts Six and Seven

Plaintiff's remaining two claims against the FMG Defendants allege generally that they stole property from him.  Specifically, Count Six asserts that, "[t]he theft by Landlord's employee of plaintiff's catalytic converter constitutes forcible detainer, conversion, and breach of implied covenant."  Proposed SAC ¶ 62.  Count Seven states that "[t]he diversion by the Landlord's employee of the plaintiff's packages [containing telephones from Consumer Cellular and "rare electronic components" for his 2008 Chrysler] constitutes distraint, conversion, and b[r]each of implied covenant."  *Id.* ¶ 63.

These allegations fail to state a plausible claim for relief.  In New Jersey, conversion is an intentional tort that consists of three elements: "(1) the defendant wrongfully exercised dominion or control over the property of another; (2) the property was taken without authorization; and (3) the property was taken to the exclusion of the owner's rights to it."  *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 753 (D.N.J. 2013) (footnote omitted) (citing *78th Infantry Div., World War II Living History Ass'n v. Oprendek*, No. 11-165, 2011 U.S. Dist. LEXIS 140014, at *15-16 (D.N.J. Aug. 4, 2011)).  "[U]nder vicarious liability principles, an employer may be held vicariously liable for an employee's intentional torts only insofar as those torts fall within the scope of the employee's employment."  *Caldwell v. KFC Corp.*, 958 F. Supp. 962, 970 (D.N.J. 1997).  Nonetheless, New Jersey courts have recognized that "[o]nly rarely will intentional torts fall within the scope of employment."  *Davis v. Devereux Found.*, 209 N.J. 269, 303 (2012).  Indeed, it is well-established that "[i]f a servant or agent deviates from the business of his master or principal and, while in the pursuit of his own ends, commits a tort, the master or principal cannot be held liable for the damage inflicted."  *Gotthelf v. Prop. Mgmt. Sys., Inc.*, 189 N.J. Super. 237, 241 (App. Div. 1983) (quotations omitted).  In other words, "if there was a theft committed by one of the defendants' . . . employees,

as plaintiffs claimed, the theft would unquestionably be outside the scope of that employee's employment, and the employer would not be liable for it." *Id.*

Here, Plaintiff's claims of conversion, diversion, and forcible detainer fail to state plausible claims for relief. The Proposed SAC does not proffer any allegations to support the inference that the FMG Defendants' unnamed employee's alleged theft of Plaintiff's catalytic converter from Plaintiff's vehicle in the Village Apartments parking lot was within the scope of his or her employment. Proposed SAC ¶ 62. Likewise, although Plaintiff complains that his package with cell phones was "diverted," Plaintiff admits that the cell phones appeared in FMG Defendants' "package room" and he was able to return them to Consumer Cellular. *Id.* ¶ 63. As such, the property was not "taken" for purposes of a conversion claim. Finally, as to Plaintiff's package containing "rare electronic components," Plaintiff alleges only that the vendor reported the package delivered and the Village Apartments staff insisted the package was received and ready for pick up, even though it was not. *Id.* ¶ 63. Plaintiff does not contend that any employee of the FMG Defendants, acting within the scope of his or her employment, intentionally took Plaintiff's package. Nor does Plaintiff explain whether the package was ever recovered, or what the results were of the "five[-]week" attempt to locate the package.[4] *Id.* ¶ 63.

Given Plaintiff's failure to adequately plead these claims, the claims are futile. Accordingly, the Court denies Plaintiff's request to include them in a Proposed Second Amended Complaint.

---

[4] In an effort to resuscitate this claim, Plaintiff argues in his reply brief—without any supporting factual allegations—that the diversion of property occurred within the scope of the FMG employees' employment. Pl.'s Reply at 7-8. Plaintiff's speculative arguments made within a reply brief cannot be used to supplement his lack of allegations within the four corners of his Proposed SAC.

F.     **Plaintiff's Remaining Requests in His Motion for Leave to Amend**

While Plaintiff's Motion is styled as a motion for leave to amend his Complaint, he raises several other requests for relief that fall outside the scope of such a motion.  The Court addresses each individually.

Primarily, Plaintiff attempts to "reserve" claims from his original Complaint that were "either omitted from the previous version of the complaint, or barred by the Court's opinion and order of January 29, 2025," so that he may reassert them "after appeal from the final judgment of the Third Circuit."  ECF No. 70-1 (Plaintiff's Brief Supporting Motion ("Pl.'s Br.")) at 3.  Such reservation is unnecessary.  "If a party omits a claim from an amended complaint that it would not have been futile to replead, that party can still preserve the claim for appellate review by standing on the dismissed claim despite leaving it out of the amended complaint."  *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 517 (3d Cir. 2007).  Here, the dismissal of Plaintiff's claims in his Amended Complaint was with prejudice, as it was "'based on some legal barrier other than want of specificity or particularity.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 803 (3d Cir. 2019) (quoting *Atkinson*, 473 F.3d at 516)).  In such a case, repleading these claims is futile, and the plaintiff need not reserve these claims in any amended pleading.  Thus, to the extent Plaintiff includes these claims in his Proposed SAC, he is denied leave to amend.  Plaintiff may appeal the dismissal of any claims dismissed with prejudice once this Court issues a final judgment in this case.

Second, Plaintiff seeks "clarification" of the Court's January 29, 2025 Opinion.  Pl.'s Br. at 6.  In doing so, Plaintiff identifies numerous alleged "errors" in the Court's Opinion.  *Id.*  Although Plaintiff's motion is styled as a request for clarification, a court, in determining the nature of a motion, must "look beyond [a] motion's caption to its substance."  *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993); *see also Asirfi v. Omni Asset Mgmt.,* LLC, No. 11-4039, 2013 WL 4858711, at *1 (D.N.J. Sept 11, 2013) (noting that motions for clarification are at times evaluated under the

standard for motions for reconsideration). Notably "'[t]he general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend.'" *Asirfi*, 2013 WL 4858711, at *1 (quoting *Resol. Tr. Corp v. KPMG Peat Marwick*, No. 92-1373, 1993 WL 211555, at *2 (E.D. Pa. June 8, 1993)). Plaintiff, however, clearly seeks reconsideration by identifying "apparent typo[s]," pointing out "the opinion's errors of law," and noting that "the cases cited in the Court's opinion are not relevant to the present action" and do not support dismissal of his claims. Pl.'s Br. at 6-7. Plaintiff asks that the Court "correct[] these interlocutory errors of law." *Id.* at 8; *see also id.* at 8-11.

Given these arguments, the Court construes Plaintiff's motion as one "invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." *Pellicano v. Blue Cross Blue Shield Ass'n*, 540 F. App'x 95, 97 n.4 (3d Cir. 2013) (citation and quotation omitted). Treated as a motion for reconsideration, the motion does not comport with Local Civil Rule 7.1(i), which requires that "a motion for reconsideration . . . be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge." L. Civ. R. 7.1(i). The Court's Order of which the Plaintiff seeks reconsideration was issued on January 29, 2025. *See* Op. Plaintiff filed his second motion to amend on February 28, 2025—thirty days later—and that motion was denied without prejudice for failure to include a proposed amended complaint. *See* ECF No. 69 (Order). Plaintiff did not file the current motion for leave to amend until April 2, 2025. Pl.'s Mot. Accordingly, any motion for reconsideration is untimely, and Plaintiff has not demonstrated any good cause for relief from the time limits imposed by the Court's Local Rules.

Third, Plaintiff argues that the 2023 state court settlement—in which Plaintiff entered into a Consent to Judgment with the FMG Defendants to vacate the property, thus resolving the 2023

eviction proceeding, *see* Proposed SAC, Ex. E—was invalid for lack of consideration and for "[l]acking the [r]equired [r]ecital." Pl.'s Br. at 12-13; *see also* Proposed SAC, Ex. F.

As noted in the Court's January 29, 2025 Opinion, however, the *Rooker-Feldman* doctrine bars consideration of this argument. Op. at 13-14. "The *Rooker-Feldman* doctrine is based on 'the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision.'" *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 419 (3d Cir. 2003) (quoting *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir. 2000)). The *Rooker-Feldman* doctrine prohibits district courts from adjudicating actions where the plaintiff requests relief that requires finding that the state court's decision was wrong or voidable. *Id.* (citation omitted). Because the state court entered the Consent Judgment, Plaintiff's requested relief would require the Court to find that the state judgment was flawed in some respect. This Court lacks subject matter jurisdiction to do so. For this reason, this portion of Plaintiff's motion is denied.

Finally, Plaintiff posits that "[i]f there may be any remaining defect(s) in the proposed amended complaint, then plaintiff requests permission to amend, to cure any such remaining defect(s)." Pl.'s Br. at 1. Plaintiff, however, has had numerous opportunities to amend his complaint to comply with Federal Rule of Civil Procedure 8 and to state plausible claims upon which relief may be granted. Plaintiff filed his initial complaint on January 26, 2024, and on April 10, 2024, filed an amended complaint, ECF No. 9, which the Court struck for failure to comply with Federal Rule of Civil Procedure's 8(a)(2) mandate for a "short and plain statement of the claim showing that the pleader is entitled to relief." ECF No. 16 (Apr. 19, 2024 Order). Thereafter, on May 20, 2024, Plaintiff filed his current Amended Complaint. Amend. Compl. Following motions to dismiss and for judgment on the pleadings by most of the Defendants, the Court dismissed Plaintiff's Amended Complaint in its entirety without prejudice. ECF No. 67 (Jan. 29, 2025 Order). In so doing, the

Court emphasized that, "Plaintiff will be afforded one final opportunity to amend" and set forth strict rules for compliance. Op. at 18. On February 28, 2025, the Court summarily denied Plaintiff's motion to amend his complaint, ECF No. 68, due to Plaintiff's failure to include a proposed amended complaint, ECF No. 69 (Mar. 3, 2025 Order). On April 2, 2025, Plaintiff filed the current Motion to Amend Complaint, seeking leave to file his Proposed Second Amended Complaint. *See* Pl.'s Mot. This iteration of the complaint, however, still fails to correct the deficiencies identified by the Court. Because Plaintiff has failed to show how he could overcome these deficiencies with yet another amendment, the District Judge may determine that no further leave to amend is warranted.. *See Rhett v. N.J. State Superior Ct.*, 260 F. App'x 513, 516 (3d Cir. 2008) (holding that after district court furnished plaintiff with multiple opportunities to prepare a properly-pled complaint, the district court did not abuse its discretion by dismissing the second amended complaint with prejudice and denying leave to file a third amended complaint). At this juncture, however, Plaintiff is not automatically entitled to yet another bite at the apple.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to file a second amended complaint is **DENIED** in its entirety as to the opposing Defendants. An appropriate Order follows.

s/Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc: Christine P. O'Hearn, U.S.D.J.